IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - -x
                       :

UNITED STATES OF AMERICA      :

                       :

    vs.                :  Criminal No. 05-0281

                       :

CHRISTOPHER BROWN         :

                       :

       Defendant     :

                       :  Washington, D.C.

- - - - - - - - - - - - - -x  August 26, 2005

TRANSCRIPT OF DETENTION HEARING
BEFORE THE HONORABLE ALAN KAY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:        LIONEL ANDRE, ESQ.
                      Assistant United States Attorney

For the Defendant:        PLEASANT BRODNAX, III, ESQ.

**Proceedings recorded by the Court, transcript produced by Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307, Washington, D.C. 20005, 202-347-5395, www.pro-typists.com M9498/bf**

1            **P R O C E E D I N G S**

2            THE CLERK:  Criminal Case Number 2005-281, the

3 United States of America versus Christopher Brown.  Lionel

4 Andre representing the Government; Pleasant Broadnax

5 representing the Defendant.  The Defendant is present in the

6 courtroom.  This is a detention hearing.

7            THE MAGISTRATE JUDGE:  Mr. Andre, is the

8 Government ready to proceed?

9            MR. ANDRE:  Yes, Your Honor, the Government's

10 ready.

11            THE MAGISTRATE JUDGE:  Very well, you may --

12            MR. ANDRE:  Good morning, Your Honor.

13            THE MAGISTRATE JUDGE:  Good morning.

14            MR. ANDRE:  Your Honor, on July 28th, 2005,

15 Defendant Christopher Brown was indicted in a five-count

16 indictment.  Count 1 is possession with intent to distribute

17 cocaine base.  Count 2, possession with intent to distribute

18 heroin.  Count 3, carrying a firearm during a drug

19 trafficking offense.  And Count 4 is felony possession of a

20 firearm.  Count 5 is simple possession of marijuana.

21            And the indictment stems from conduct that had

22 occurred on April 13th, at approximately 4:58 p.m., which is

23 the height of rush hour.  Police from the United States Park

24 Police observed the Defendant driving through the Third

1   Street Tunnel at a high rate of speed, and based on the

2   speed that the officers were going they estimated that the

3   Defendant was traveling between 80 to 90 miles per hour.

4   The officer attempted a traffic stop and at one point the

5   officer himself had sped up to 90 miles an hour and still

6   could not catch up to the Defendant's vehicle.

7          The Defendant was eventually stopped at a traffic

8   light on New York Avenue and I-395.  The officers were

9   then able to stop the Defendant and they arrested him for

10   driving 30 miles above the posted speed limit of 45 miles

11   per hour.

12         During a search incident to the arrest, the

13   officers recovered a loaded firearm; that is, a CZ Visor

14   (phonetic) .70-caliber pistol, .70-caliber --

15         THE MAGISTRATE JUDGE:  Seventy caliber.

16         MR. ANDRE:  It's a 70 cal --

17         THE MAGISTRATE JUDGE:  Seven zero.

18         MR. ANDRE:  Seven zero.  That could be the name of

19   the gun, Your Honor.  I'm not familiar with it.

20         THE MAGISTRATE JUDGE:  That's a cannon, that's not

21   a gun.

22         MR. ANDRE:  The name of the gun is C-Z V-Z-O-R and

23   it has a 70 and it says "caliber."

24         THE MAGISTRATE JUDGE:  Seventy caliber I think

1 would be a cannon.

2            MR. ANDRE:  That would be a cannon, but I believe

3 that's the name of the gun, and there was one round in the

4 chamber and one round in the magazine.

5            The police also recovered two grams of heroin, one

6 gram of marijuana, and on a key chain to the car was

7 a canister, and that canister contained 1.5 grams of crack

8 cocaine, and the Defendant had 64 empty Ziplocs on his

9 person.

10            They read the Defendant his rights and the

11 Defendant admitted that the gun, the marijuana and the

12 heroin was his, and he had obtained it from a friend.

13 And that was after he was read his Miranda rights.

14            At the time of the Defendant's arrest, he was on

15 probation in Superior Court for possession with intent to

16 distribute heroin.  I believe that's a case before Judge

17 Fisher.  And I believe at the time he was arrested he also

18 had pending a matter in Superior Court for a misdemeanor,

19 but there might be some confusion whether that matter is

20 still pending.

21            But in his release conditions in the Judge Fisher

22 matter, he took a solemn oath, a sworn oath that he would

23 obey the laws of the District of Columbia, and he apparently

24 failed to do that because he's driving at a high rate of

1  speed, rush hour, with a loaded gun and a variety of

2  controlled substances in his vehicle.

3          And he personally has a pending case in Virginia,

4  and it appears to be possession and transportation of a

5  firearm by a felon, and I don't have any details of what the

6  firearm is other than conversation with counsel, and I'm

7  sure counsel will shed some light.

8          So in light of the indictment and the fact that

9  this is a dangerous offense, we would ask that the Defendant

10  be held without bond.  And coincidentally, just today

11  reading a "Washington Post" article, and I'll tender a copy

12  of page B-2, which is a sample of what guns and gun violence

13  is doing to this metropolitan area.  In the "Crime and

14  Justice" section on page B-2, every single section is about

15  a fatal shooting.  So if there's any doubt about the

16  dangerousness of individuals carrying guns, that's what it

17  does to our community.

18          And for those reasons, Your Honor, we would ask

19  that he be held pending trial, be held without bond.  Thank

20  you.

21          THE MAGISTRATE JUDGE:  According to the Pretrial

22  Services report, Mr. Andre, it indicates, on the first page,

23  "Detention eligibility," that he's currently on release in a

24  pending felony case.  Is that Superior Court -- and then

1 under that it says, "On probation or parole."  You indicated

2 that you weren't sure but you thought there was a pending

3 misdemeanor case.

4        MR. ANDRE:  Well, the carrying a pistol without a

5 license charge, I believe is the same as this case.  The

6 previous report that I had looked at -- I just got this

7 report minutes before Your Honor took the bench, I had been

8 under the impression that he had a pending misdemeanor case

9 in front of Judge Mitchell Rankin, but I understand from

10 talking to counsel that matter was resolved.  So at the time

11 of his arrest -- I'm sorry, he was.  At the time of --

12        THE MAGISTRATE JUDGE:  I just don't understand

13 this.

14        MR. BROADNAX:  Your Honor, I may be able to help.

15        THE MAGISTRATE JUDGE:  All right, all right.  All

16 right.  Thank you.  I'll hear from Mr. Broadnax, Mr. Andre,

17 and maybe he can clarify --

18        MR. BROADNAX:  Thank you.

19        MR. ANDRE:  Okay.

20        THE MAGISTRATE JUDGE:  -- what the present status

21 is of Mr. Brown in Superior Court.

22        MR. BROADNAX:  Yes.  Your Honor, with respect to

23 the case with Judge Fisher.  Judge Fisher placed Mr. Brown

24 on probation and we have appeared in front of Judge Fisher

1  twice, anticipating an indictment in this case.  Judge

2  Fisher indicated that he was going to follow the Federal

3  case.  So there's been no revocation or anything in front of

4  Judge Fisher.

5          THE MAGISTRATE JUDGE:  Is he on PR from --

6          MR. BROADNAX:  Yes -- well --

7          THE MAGISTRATE JUDGE:  -- before Judge Fisher?

8          MR. BROADNAX:  A thousand dollar bond.  I think

9  it's a thousand dollars.

10          THE MAGISTRATE JUDGE:  Which has been posted?

11          MR. BROADNAX:  Yes.

12          THE MAGISTRATE JUDGE:  All right.

13          MR. BROADNAX:  Yes.  With respect -- so that

14  certainly makes reference to the Defendant on probation

15  or parole.

16          Judge Mitchell Rankin --

17          THE MAGISTRATE JUDGE:  Well, on probation or

18  parole doesn't address that matter before Judge Fisher.

19  He's on PR before Judge Fisher.

20          MR. BROADNAX:  Well, but he was placed on

21  probation.  See, he had -- actually, it was an attempt --

22          THE MAGISTRATE JUDGE:  When you say he hasn't

23  taken action, you mean he hasn't taken action with respect

24  to whether or not to revoke probation.

1          MR. BROADNAX:  Yes.

2          THE MAGISTRATE JUDGE:  I'm sorry --

3          MR. BROADNAX:  Yes.

4          THE MAGISTRATE JUDGE:  -- I misunderstood you.

5          MR. BROADNAX:  I'm sorry if I didn't make that

6 clear, Your Honor.

7          THE MAGISTRATE JUDGE:  I thought you meant he was

8 trailing --

9          MR. BROADNAX:  No.

10          THE MAGISTRATE JUDGE:  -- the Federal case.

11          MR. BROADNAX:  Before this incident happened,

12 I don't know sometime before, Judge Fisher sentenced him

13 to 14 months probation or something like that.

14          THE MAGISTRATE JUDGE:  I see, I see.  I see, all

15 right.

16          MR. BROADNAX:  And we have appeared, after this

17 stop and after the preliminary hearing in front of Judge

18 McCarthy over in Superior Court, the same day we appeared in

19 front of Judge Fisher; he was granted bond in both of those

20 cases in the amount of a thousand dollars.

21          Judge Fisher has indicated that rather than have a

22 revocation hearing he's just going to follow the Federal

23 case.  And we have, like I said, been in front of him twice,

24 and Mr. Brown of course knows that that this was coming.

1          What he had in front of Judge Fisher was an

2    attempted possession with intent to distribute heroin of a

3    small amount to a fellow user, and I think that probably

4    factored into Judge Fisher's sentence in the case.

5          The matter in front of Judge Rankin was resolved.

6    I think he got 20 days.  So there's nothing pending in

7    front of Judge Rankin.

8          I believe that the reference to being a "pending

9    felony case," is in Virginia, in Fairfax County.  That's

10   my impression.  There is a case there that I represent

11   Mr. Brown on.  It was a Taser that was in a vehicle that

12   he was driving.  A Taser -- I didn't know this until doing

13   some research -- a Taser is considered a weapon that a felon

14   cannot possess, although you can buy them in gas stations or

15   even in drugstores.  And a Taser was in the vehicle that he

16   was driving, and that is the charge that he currently is

17   facing in Fairfax County.

18         So unless there's something I don't know about,

19   that's the only felony case.

20         THE MAGISTRATE JUDGE:  All right, good.  Thank

21   you.  That clarifies some of the apparent confusion here.

22         MR. BROADNAX:  Okay.  Yes.  And I just received,

23   Your Honor, the copy of this report as well, and I haven't

24   had a chance to read through all of this so I can't tell you

1 if all the information is accurate.

2          Clearly, Your Honor, in April after this happened

3 and after he appeared in Court, everyone knew that we would

4 eventually be here because he does have a felony record.

5          THE MAGISTRATE JUDGE:  You mean the arrest in this

6 case.

7          MR. BROADNAX:  Yes.

8          THE MAGISTRATE JUDGE:  All right.

9          MR. BROADNAX:  In April.

10          THE MAGISTRATE JUDGE:  Right. Judge Fisher put him

11 on probation when, Mr. Broadnax?

12          MR. BROADNAX:  Shortly before April 13th.  I don't

13 remember how long it was, but I represented him in front of

14 Judge Fisher --

15          THE MAGISTRATE JUDGE:  I see.

16          MR. BROADNAX:  -- and I don't remember how long it

17 was but it was -- this incident happened, if my recollection

18 serves me -- yes, clearly, after we appeared in front of

19 Judge Fisher, because Judge Fisher otherwise would have

20 known about this and would have had concern about this.

21          THE MAGISTRATE JUDGE:  Because they've got

22 something -- on April 14, was this case -- I see on the

23 front page of the "Criminal history," from the Pretrial

24 Services, it says, and -- it's a CPOL.

1          MR. BROADNAX:  Yes.

2          THE MAGISTRATE JUDGE:  In that case is what, did

3 that sort of migrate and evolve into the 922, and --

4          MR. BROADNAX:  Yes.  Yes.

5          THE MAGISTRATE JUDGE:  In this case.

6          MR. BROADNAX:  Yes.  When he was first arrested,

7 he was charged, Your Honor, I believe with some sort of drug

8 case while armed.

9          THE MAGISTRATE JUDGE:  I see.  No, I think on the

10 second page, Mr. Broadnax, in March, on March 3, he was put

11 on 14 months probation.

12          MR. BROADNAX:  Okay.

13          THE MAGISTRATE JUDGE:  I think that's --

14          MR. BROADNAX:  Yes.  Yes.

15          THE MAGISTRATE JUDGE:  -- so that would have been

16 when you were before Judge Fisher.

17          MR. BROADNAX:  Yes, Your Honor.

18          THE MAGISTRATE JUDGE:  All right.  Good.  Thanks.

19  All right.

20          MR. BROADNAX:  And so it was originally papered as

21 a something while armed, I can't remember, and then

22 eventually it was papered as a carrying a pistol without a

23 license, and that's what it is that was currently pending in

24 Superior Court, which has migrated into this case.  This is

1 the -- this is that case.

2            THE MAGISTRATE JUDGE:  I see.

3            MR. BROADNAX:  So of course, Your Honor, back in -

4 - yes, so two things.  One is, that was an attempted --

5 yeah, right, here we are, on page 2, "attempted possession

6 with intent to distribute heroin."  This offense, Your

7 Honor, of course, happened in the Third Street Tunnel.

8            THE MAGISTRATE JUDGE:  In April.

9            MR. BROADNAX:  In April.  Yes.

10            THE MAGISTRATE JUDGE:  So he's currently being

11 held by this Court or he's currently being held by Superior

12 Court?

13            MR. BROADNAX:  Superior Court on Judge Green,

14 sentenced him to 60 days for the speeding.  That's why he's

15 incarcerated.  He appeared on the speeding in front of Judge

16 Green --

17            THE MAGISTRATE JUDGE:  I see.  And he was

18 beginning that sentence when?

19            MR. BROADNAX:  I think it was a couple weeks ago,

20 Your Honor.

21            THE MAGISTRATE JUDGE:  I see.

22            MR. BROADNAX:  Couple weeks ago.

23            THE MAGISTRATE JUDGE:  So he has the balance of

24 that sentence.

1          MR. BROADNAX:  Yes.  Yes.

2          THE MAGISTRATE JUDGE:  So anything this Court does

3 would be a Pyrrhic victory at this point.

4          MR. BROADNAX:  At this point, yes, yes, Your

5 Honor.

6          THE MAGISTRATE JUDGE:  Yes.  All right.

7          MR. BROADNAX:  And I think he's due to be released

8 sometime maybe in October.

9          THE MAGISTRATE JUDGE:  I see.  All right.

10          MR. BROADNAX:  Okay?  So this, I presume, will

11 make a couple of things clear, because at another hearing --

12 oh, yes, at the traffic hearing there was some indication,

13 the Assistant Attorney General didn't know and Judge Green

14 didn't know, and I think that's the reason he got the time

15 he did, there was some indication that the Judge believed

16 that he was fleeing.  And I conducted the preliminary

17 hearing with the actual Park Police officer.  There was no

18 indication at all that he was fleeing.  The car was

19 unmarked, the Park Police car, was unmarked.

20          THE MAGISTRATE JUDGE:  He was just in a hurry,

21 going 90 miles an hour to go through the tunnel?

22          MR. BROADNAX:  He was going very fast through the

23 tunnel, trying to reach an appointment with a real estate

24 agent.  If you -- yes, at, you know, rush hour in the

1 afternoon.

2           THE MAGISTRATE JUDGE:  Well.

3           MR. BROADNAX:  Yes.

4           THE MAGISTRATE JUDGE:  I guess that in and of

5 itself is a challenge, is it not, to go 90 miles an hour

6 in that tunnel during rush hour?

7           MR. BROADNAX:  Yes, yes, Your Honor.

8           THE MAGISTRATE JUDGE:  There are times when you

9 can barely go 20 miles an hour in there.

10          MR. BROADNAX:  Well, actually, you know,

11 oftentimes, Your Honor, although the speed limit is 45 in

12 that tunnel, it appears that people --

13          THE MAGISTRATE JUDGE:  Don't try and rationalize

14 90 miles an hour, Mr. Broadnax.

15          MR. BROADNAX:  Oh, no.  Oh, no.  No, no, no, I'm

16 not trying to rationalize 90.  I'm just telling you that it

17 appears that people routinely go above 45.  The officer said

18 he was going 60, and he was going into the exit lane to come

19 out when, you know, in his unmarked car, when this car sped

20 past him.  You know, it's one of these new -- what do you

21 call those things, the Chrysler that looks like the --

22          THE MAGISTRATE JUDGE:  The 300s.  Yes.

23          MR. BROADNAX:  "C," yes, Your Honor.

24          THE MAGISTRATE JUDGE:  Police car?  Or you mean

1  someone else driving and the 300 was seeing if they could

2  beat him?

3          MR. BROADNAX:  No, he was driving the 300C.

4          THE MAGISTRATE JUDGE:  Oh, he was driving the 300.

5

6          MR. BROADNAX:  Yes.

7          MR. BROADNAX:  He was testing that engine, all

8  right.

9          MR. BROADNAX:  Yes, yes.  And so as he's coming up

10 through the intersection, unmarked car, no lights anything,

11 so when he stops at the intersection the officer gets out of

12 the car and that's how he was arrested.  There was no

13 fleeing whatsoever, and I just wanted to make sure that Your

14 Honor knew that.

15          Also, since this has happened, of course, we have

16 been to Court several times, one on the traffic matter, two

17 before Judge Fisher, and Mr. Brown has known that this is

18 coming, and I think that should be a factor in Your Honor

19 considering the fact that he is not a risk of flight.  Every

20 case he's ever had, he's always appeared on time, never

21 failed to appear for any case that I've represented him on

22 with respect to what's shown here in the Pretrial Services

23 Agency report.

24          The issue of the gun, or the statement that

1  counsel makes reference to, is going to be an issue that

2  is going to be litigated, Your Honor, in the form of a

3  suppression hearing.  So we are not conceding that the

4  statement was voluntary and properly taken.

5          I think there were some bags that counsel made

6  reference to, as well.  Those were located in a jacket

7  in the trunk, which I believe had someone else's

8  identification in that jacket.  So, you know, there were

9  other people -- clearly, the proof will show there were

10  other people who drove this car, not just Mr. Brown.

11          Now, Your Honor, in the Court today is Mr. Brown's

12  mother and Mr. Brown's fiancée, and we would submit to the

13  Court that because he's not -- we believe he's not a risk of

14  flight, he also has people who will support him if he were

15  able to obtain bond in this case, so Your Honor would not

16  have to be worried that he would be out on the street,

17  selling drugs in order to support himself or anything like

18  that, because the support he has here is more than enough to

19  provide the Court with some assurance.

20          We have someone here today, Your Honor, that would

21  be able to put up probably 250, maybe even more, equity in a

22  home, thousand -- $250,000.00 equity in a home that would

23  secure Mr. Brown's return to Court and make sure that he is

24  not in violation of any conditions that Your Honor may set.

1

2          Mr. Brown knew this day was coming, and he did not

3 attempt to flee.  He has not -- well, with the exception of

4 the Fairfax case which, like I said, was a Taser that

5 belonged to someone else, that was in a car he was driving -

6 -

7          THE MAGISTRATE JUDGE:  Did they have a warrant in

8 that case?  Is there an outstanding warrant?

9          MR. BROADNAX:  No, no, no.  We have appeared in

10 Fairfax County.

11          THE MAGISTRATE JUDGE:  I see.

12          MR. BROADNAX:  We have appeared in Fairfax County,

13 we have --

14          THE MAGISTRATE JUDGE:  And is he on some sort of

15 bond --

16          MR. BROADNAX:  Yes.

17          THE MAGISTRATE JUDGE:  -- condition there?

18          MR. BROADNAX:  Yes.  I can't -- I think he's on PR

19 bond, Your Honor.  I did not appear at the first hearing,

20 but I appeared and set a preliminary hearing date and

21 entered my appearance.  And I presume -- I'm pretty sure

22 he's on PR bond there.

23          So clearly, Your Honor, he was driving very fast

24 in the tunnel, and we would also like to point out that we

1 believe, if you look in the discovery in this case -- of

2 course, the indictment doesn't make this clear, but in the

3 discovery in the case what was retrieved from the car was

4 two grams of suspected heroin, two grams of heroin, and

5 1.5 grams of what is suspected to be crack cocaine.  We

6 don't have any DEA reports to verify that these substances

7 are in fact what they are believed to be, or the measurable

8 amount in them, but two grams and 1.5 grams is what the

9 Government has anticipated that they will be.  And to take

10 that, along with the empty bags that are in a coat in the

11 trunk that has some other identification in it and

12 essentially bootstrap it into a 924(c), I think that's

13 another factor under 3142, Your Honor, when you consider the

14 weight of the evidence against him and their charges against

15 him.

16          I just want to make sure that Your Honor

17 understands that the weight of the drugs that were found

18 in the car, essentially about three grams, and what the

19 indictment does is charge him with possession with intent to

20 distribute that, so that they may charge a 924(c).

21          Now, of course, the 922(g) would stand on its own

22 since he does have a felony record.  But the 924(c), the

23 five-year mandatory minimum, we believe is a major stretch

24 in this case.  I just wanted Your Honor to understand that,

1 because we are going to ask Your Honor to set conditions.

2 We believe conditions can be set that will both assure the

3 safety of the community and his appearance.  He has no

4 violent history, no history of using any firearms, anything

5 like that.

6          He has the support of his mother, he has the

7 support of his fiancée, as I said, Your Honor.  His fiancée

8 is here ready to do whatever needs to be done to assure Your

9 Honor that he will appear.  Inasmuch as she's willing to put

10 up her home.  Which I believe is valued at -- or at least

11 the tax assessment I think is about $800,000.00.  And there

12 may be, you know, I don't know if there are any liens

13 against it or not, but I've been assured that there is at

14 least half a million dollars in that, and perhaps, you know,

15 if that didn't satisfy Your Honor, some other arrangements

16 could also be made.

17          THE MAGISTRATE JUDGE:  Before you sit down,

18 Mr. Broadnax --

19          MR. BROADNAX:  Yes, Your Honor.

20          THE MAGISTRATE JUDGE:  -- just the sequence of

21 events.  So he was placed on probation by Judge Fisher in

22 March of this year.  He then, while on probation he was

23 arrested, following the event in the Third Street Tunnel, in

24 April.  And was charged in Superior Court, one on the

1  traffic charge, and he was also charged with CP --

2            MR. BROADNAX:  Yes, carrying a pistol --

3            THE MAGISTRATE JUDGE:  -- carrying a pistol,

4  CPWOL.

5            MR. BROADNAX:  Yes.

6            THE MAGISTRATE JUDGE:  Was there also a drug

7  charge?

8            MR. BROADNAX:  No.

9            THE MAGISTRATE JUDGE:  That flowed out of that?

10  So there was just the carrying a pistol and the traffic

11  charge.

12            MR. BROADNAX:  Yes.

13            THE MAGISTRATE JUDGE:  And on the pistol charge he

14  was placed on PR or $1,000.00 bond --

15            MR. BROADNAX:  One thousand dollar bond.

16            THE MAGISTRATE JUDGE:  -- which was posted.

17            MR. BROADNAX:  Yes.

18            THE MAGISTRATE JUDGE:  All right.  And there he

19  remained under those charges until the grand jury took

20  action in this Court --

21            MR. BROADNAX:  Yes.

22            THE MAGISTRATE JUDGE:  -- and I assume the CPWOL -

23            MR. BROADNAX:  Merged.

24            THE MAGISTRATE JUDGE:  -- has been merged or has

1 been dismissed over in Superior Court.

2          MR. BROADNAX:  Well, you know, I don't know

3 whether it's been dismissed or not, because after the

4 preliminary hearing there were no other dates set at all.

5          THE MAGISTRATE JUDGE:  Well.

6          MR. BROADNAX:  And of course --

7          THE MAGISTRATE JUDGE:  But it's the same facts --

8          MR. BROADNAX:  Yes, the exact same facts, yes.

9          THE MAGISTRATE JUDGE:  -- so clearly the

10 Government can't prosecute him in both courts for the same

11 things.

12          MR. BROADNAX:  Right.

13          THE MAGISTRATE JUDGE:  All right.  I just wanted

14 to get that clarified.  Good.

15          MR. BROADNAX:  Yes.  Yes, Your Honor.

16          THE MAGISTRATE JUDGE:  Thank you, Mr. Broadnax,

17 for your help.

18          MR. BROADNAX:  Yes, Your Honor.

19          MR. ANDRE:  I do want to further clarify

20 something.  At the time that Mr. Brown was arrested for this

21 case, he had only been on probation for about 40 days, and

22 he still had a pending misdemeanor case in front of Judge

23 Mitchell Rankin, because this incident occurred on April

24 18th, 2005, the Mitchell Rankin case, the misdemeanor

1  possession, was resolved on June 2nd, 2005.  So he had

2  conditions that were imposed on him and he chose to violate

3  those conditions.  While this case was pending, he then goes

4  out and gets arrested in July with a Taser gun.  It's

5  irrelevant whether the gun can be purchased at a gas station

6  or --

7            THE MAGISTRATE JUDGE:  Well, is it an illegal

8  weapon?

9            MR. ANDRE:  Tasers?

10           THE MAGISTRATE JUDGE:  Yes.

11           MR. ANDRE:  They are illegal in the District of

12 Columbia.

13           THE MAGISTRATE JUDGE:  I see.  All right.  All

14 right.  I know guns are legal in Virginia, but.

15           MR. ANDRE:  First of all, he's been indicted,

16 probable cause has already been found.  Grand jury, a

17 federal grand jury believed, based on the facts of this

18 case, he committed the act of possession with intent to

19 distribute cocaine and heroin.

20           Also, it's not just about the nature of the

21 offense or the weight of the evidence.  Also history and

22 characteristic of the Defendant.  Clearly, this Defendant is

23 a danger to the community and counsel has not overcome the

24 presumption, based on these cases, because to drive 90 miles

1 per hour in a tunnel during the height of rush hour shows

2 callous disregard for the community.

3          To then have a loaded gun as well as drugs in the

4 car is also demonstrates his character as someone who's a

5 danger to the community, and based on -- he does not obey

6 Court orders, he does not -- he takes a solemn oath to obey

7 he law and he continues to violate the law.

8          THE MAGISTRATE JUDGE:  Yes.

9          MR. ANDRE:  So for that reason --

10          THE MAGISTRATE JUDGE:  I understand the

11 Government's position, Mr. Andre.  Thank you.

12          MR. ANDRE:  Thank you.

13          THE MAGISTRATE JUDGE:  All right.  Mr. Brown, as

14 you know this case is assigned to Judge Kennedy, and Judge

15 Kennedy is going to be the Trial Judge in this case.  The

16 only issue before this Court at this time is a question as

17 to whether or not the Court should grant the Government's

18 motion that you be held without bond pending trial or

19 pending any further action by Judge Kennedy.  So let me just

20 tell you how I see the situation here, and your counsel,

21 Mr. Broadnax, has made a very eloquent argument for your

22 release, but let me tell you how this Court views the

23 situation here.

24          You've got a series of events.  You find yourself

1 in Superior Court and you're before Judge Fisher, and he

2 places you on probation back in April or March, excuse me,

3 in March of this year. And part of that release on

4 probation, rather than locking you up, is that you not

5 engage in any other criminal activity. And seems to me that

6 when you make an undertaking of staying out of trouble, that

7 carries with it your assurance to that judicial officer that

8 you will do that.

9          Now, you're a young man, you're in your 30s,

10 you're going to learn, if you haven't already learned, that

11 the only thing we really have as human beings is an ability

12 to give our word and stick by it. And I'm sure you run into

13 that. And you gave that assurance when you agreed to go on

14 probation in lieu of going to jail. And as the Government

15 prosecutor pointed out, within 40 days you find yourself

16 driving a vehicle at 90 miles an hour with a gun in the car

17 that is loaded, loaded -- not a Taser, but this is a weapon,

18 and a quantity of drugs, albeit not a humongous quantity but

19 by the same token in the trunk there's a group of Ziplocs

20 which would reflect that somewhere along the line whoever

21 had control of those Ziplocs was in the business of selling

22 drugs.

23          And it seems to me after 40 days you're not really

24 sending a message to any subsequent judicial officer,

1 Mr. Brown, that you're going to agree to follow any

2 conditions of release that that second judicial officer sets

3 for you.

4          Now, you're released after you get charged in that

5 case with possession of a weapon, and the traffic charge,

6 and you find yourself, you're outside and you're still on

7 probation from Judge Fisher and you're on release, which is

8 your personal bond to what?  Show up for Court, which you

9 ostensibly did, and stay out of trouble.  And then you find

10 yourself over in Virginia in July, and you purchase a Taser

11 -- I don't know whether it's legal or not in Virginia, but

12 clearly it's illegal in the District of Columbia and you

13 bring that Taser into the District of Columbia.  You're your

14 own worst enemy.

15          MR. BROADNAX:  I'm sorry, Your Honor, no.

16          THE MAGISTRATE JUDGE:  He didn't bring it into the

17 District?  No, all right.

18          MR. BROADNAX:  No, no, no, that's the Fairfax

19 charge.

20          THE MAGISTRATE JUDGE:  I understand that.  Yes.

21          MR. BROADNAX:  And he lives Virginia.

22          THE MAGISTRATE JUDGE:  And he lives in Virginia.

23 All right.

24          So the issue in that case is whether or not

1 possession of a Taser is going to be legal or not.  All

2 right.

3          But you do have a situation where you're on

4 probation and on your personal bond over there, and then you

5 are subsequently indicted here.  I think, Mr. Brown, that

6 you have not overcome the presumption.  The statute provides

7 that if you are charged with a drug charge under the Federal

8 law, there is a presumption that the person is dangerous and

9 that presumption has to be overcome by the Defendant, not

10 the Government.  And this Court is of the opinion that you

11 have not overcome that presumption.

12          The Court takes into account the fact that you

13 have a supportive mother and a supportive fiancée who is

14 willing to put up a substantial amount of money.  However,

15 the Court feels that there is a risk attendant to your being

16 released.  I do not question that you probably would show up

17 for all further Court hearings.  But the Court has no real

18 confidence that if you were released, that you would stay

19 away from guns and drugs.

20          You already promised to do that on two separate

21 occasions, and you've just thumbed your nose at it.  So

22 you've got no one to fault but yourself.  And the Government

23 points out and everyone knows in this city on a daily basis

24 people are getting killed, young people, innocent people,

1 are being shot and killed.  Why?  Because people have guns

2 and they tend to use them.

3          So this Court finds, by clear and convincing

4 evidence, that there are no conditions or combination of

5 conditions that would warrant your release at this time.

6 And will direct that you be held without bond.

7          Now, this matter can be revisited by Judge

8 Kennedy, I assume, between now and the end of the period of

9 the sentence that you're serving on the traffic charge that

10 you will be appearing before Judge Kennedy and that issue

11 can be revisited and he can also consider whether or not he

12 is willing to accept a cash bond in the amount of whatever

13 equity is in the home of your fiancée.  But this Court finds

14 that there's no basis to release you at this time.

15          Thank you, counsel.

16          (Whereupon, proceedings were concluded.)

17

18

UNITED STATES OF AMERICA )
                         ) Criminal No. 05-0281
DISTRICT OF COLUMBIA     )


          I, PAUL R. CUTLER, do hereby certify that a
recording of the foregoing proceedings in the above matter
was duplicated from an original recording by the Office of
the Clerk, United States District Court for the District of
Columbia, and that said duplicate recording of the
proceedings was transcribed under my direction to
typewritten form.

                         _____
                              PAUL R. CUTLER


          I do hereby certify that the foregoing transcript
was typed by me and that said transcript is a true record of
the recorded proceedings to the best of my ability.

                         _____
                              BONNIE FURLONG